**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: VERISIGN, INC.  SECURITIES LITIGATION | ) ) ) ) | MISC. DOCKET NO. 04-MC-0095 (U.S. District Court, N.D. Calif., San Jose Division, Case No.: CV-02-2270 JW-(PVT)) |
| This Document Relates To: ALL ACTIONS | ) ) ) ) ) ) ) ) ) | OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER AND REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ALL ACTIONS NON-PARTY STONERIDGE INVESTMENT PARTNERS' MOTION TO QUASH SUBPOENA FOR PRODUCTION OF DOCUMENTS AND THINGS |

**INTRODUCTION**

The issue before this Court is very simple – should a non-party be required to produce every single piece of information concerning its business.  There is no objection by the non-party to the production of documents concerning one of the proposed class representatives in the securities fraud class action lawsuit.  Many of those documents have been produced or are in the process of being produced.  However, non-party, investment advisor should not be required to produce every document for a two year period evidencing "all transactions in securities (other than VeriSign securities") or documents concerning its proprietary screening tools.

**ARGUMENT**

A.     **Defendants' Motion to Transfer Should be Denied**

In opposing Non-Party StoneRidge Investment Partners' Motion to Quash Subpoena for Production of Documents and Things ("Motion to Quash"), Defendants simultaneously move to transfer the instant discovery dispute to the Northern District of California, where the underlying litigation is taking place.  Defendants argue that this discovery issue should be transferred because: (1) "of the complex nature" of this discovery dispute: (2) other orders issued by the Northern District

of California; and (3) due to the Northern District of California's "intimate familiarity" with the issues arising from StoneRidge's Motion to Quash. Def. Mem. at 3[1].  In arguing for a transfer, however, Defendants: (1) ignore the plain language of a Federal Rule of Civil Procedure which would not support such a transfer; (2) fail to inform the Court that Northern District of California case law militates in favor of that court subsequently transferring the discovery issue back to the Eastern District of Pennsylvania to resolve the issue, a consequence which could only result in a waste of the Court's and parties' time; and (3) cite a procedurally distinguishable decision from the Eastern District of Pennsylvania.

### 1. Federal Rule of Civil Procedure 45 Makes Clear That Only the Eastern District of Pennsylvania Has the Authority to Quash, Modify or Enforce the Subpoena at Issue

Federal Rule of Civil Procedure 45 ("Rule 45") governs the mechanics with respect to subpoenas. With respect to the authority to quash or modify a subpoena, Rule 45 could not be more clear that *only the Court issuing the subpoena*, in this case the Eastern District of Pennsylvania, has the authority to quash or modify an issued subpoena: "On timely motion, *the court by which a subpoena was issued* shall quash or modify the subpoena" if such motion meets any of various criteria.  Fed. R. Civ. P. 45(c)(3)(A)(emphasis added).  This concept is also supported by the majority of case law[2].  *See, e.g., Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Calif. 2002)("*Visx*")(citing Fed. R. Civ. P. 45(c)(3)(A));  *see also In re Armstrong v. Red River Entertainment of Shreveport*, 1997 U.S. Dist. LEXIS 1863, 1997 WL 739616 (Bankr. E.D. Ark.

---

[1]     All references to Defendants' Motion to Transfer or, in the Alternative, Opposition to StoneRidge Investment Partner's Motion to Quash Subpoena for Production of Documents and Things and Motion to Compel, will be cited to herein as "Def. Mem. at ___."

[2]     There are some courts which agree with Defendants that Rule 45 should not be read so literally and that courts other than the issuing court may modify or quash subpoenas. However, as addressed herein below, a recent decision interpreting Rule 45 in another Third Circuit court, where the proposed transferor court lies, follows the literal reading of Rule 45, as does a recent decision interpreting Rule 45 in the proposed transferee court, the Northern District of California.

Nov. 12, 1997); *Aguinaga v. United Food and Commercial Workers Int'l Union*, 1993 U.S. Dist. LEXIS 14353, 1993 WL 405964 at *2 (D. Kan. Sept. 27, 1993);  9A Wright & Miller, Federal Practice & Procedure § 2459 (1995).

Applying the plain language of Rule 45 to the subpoena at issue herein, only the Eastern District of Pennsylvania has the jurisdiction and authority to quash or modify the subpoena herein, which was issued under the jurisdiction of the Eastern District of Pennsylvania.   Therefore, Defendants' Motion to Transfer should be and must be denied.

### 2.    Defendants' Reliance on *Central States* is Misplaced

In support of Defendants' Motion to Transfer, Defendants rely solely on *Central States, Southeast & Southwest Areas Pension Fund v. Quickie Transport Co.*, 175 F.R.D. 50 (E.D.P.A. 1997)("*Central States*") in arguing that this discovery dispute should be transferred.  As Defendants correctly note, Def. Mem. at 4, *Central States* involved a discovery dispute over a subpoena issued under the jurisdiction of the Eastern District of Pennsylvania which was transferred to the underlying court in Illinois.  *Central States,* 175 F.R.D. at 51.  However, that is where the similarities end.  The *Central States* discovery dispute involved a subpoena for not only documents but also for deposition testimony from an attorney representing defendants in the underlying litigation.   Moreover, the motion for protective order was filed by defendants, not by the non-party.

What Defendants do not tell the Court is that in a recent case more procedurally akin to the situation at hand interpreting Rule 45 from another District Court in the Third Circuit a more literal reading of Rule 45 was applied.  In *Brunn v. DaimlerChrysler ("Brunn")*, 2003 U.S. Dist. LEXIS 24080 (Virgin Isl. 2003), plaintiff moved to compel an Illinois subpoena duces tecum served on a non-party in the Virgin Islands.  *Id.*  The *Brunn* Court: (1) analyzed the issue under Rule 45; (2) noted that only the issuing court in Illinois had the power thereunder to act on its subpoenas; and (3) stated that nothing in the Federal Rules of Civil Procedure "even hints that any other court may be given the power to quash or enforce them." *Id.* at *2 (quoting *In re Sealed Case*, 329 U.S. App. D.C.

37, 141 F. 3d 337, 341 (D.C. Cir. 1998)).  Accordingly, the *Brunn* Court held that since it had not issued the subpoena in question, it did not have the jurisdiction or power to enforce it.  *Id.* at *4.

Similarly, since the subpoena in dispute herein was issued to a non-party located in Malvern, Pennsylvania under the jurisdiction of the Eastern District of Pennsylvania, *only the Eastern District of Pennsylvania* has the power under Rule 45 and recent case law to quash, modify or enforce the subpoena.  Therefore, Defendants' Motion to Transfer should be and must be denied.

### 3.        The Northern District of California May Refuse to Enforce the Subpoena

Even if, *arguendo*, the matter were transferred to the Northern District of California, under applicable case law, the Northern District of California will most likely refuse to enforce the subpoena.  A similar issue was raised in the Northern District of California in *Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615 (N.D. Calif. 2002)("*Visx*").  In *Visx*, plaintiff moved the Court to enforce subpoenas issued to at least 16 third parties, none of which were each issued by the Northern District of California.  Citing Rule 45, the Court in *Visx* noted that under the Federal Rules of Civil Procedure only "the court by which the subpoena was issued shall quash or modify the subpoena." *Id.* at 616 n.1 (citations omitted).  The Court also noted that "the only procedure for enforcing a subpoena duces tecum is to institute contempt proceedings *before the district court that issued the subpoena*." *Id.* at 616 (citations omitted)(emphasis added).  Consequently, the Court concluded that "Rule 45 is clear that such subpoenas can *only* be enforced in the District Court in which they were issued," and denied the motion to enforce the subpoenas.  *Id.* (emphasis added).

Similarly, under *Visx*, the Northern District of California will likely refuse to quash, modify, or enforce the subpoena at issue herein, as it was issued from the Eastern District of Pennsylvania.  Thus, transferring this discovery dispute to the Northern District of California would result only in a complete waste of time for the Court and the parties, as the Northern District of California will likely refuse to adjudicate the issue and will likely subsequently send it back for adjudication to the

only court with the power to quash the subpoena, the Eastern District of Pennsylvania.  Therefore, Defendants' Motion to Transfer should be and must be denied.

**B.     StoneRidge Investment Partners' Motion to Quash Subpoena for Production of Documents and Things Should be Granted**

In analyzing StoneRidge's Motion to Quash, it is important to note that StoneRidge is willing to produce documents responsive to Request Nos. 1-10, and in fact, has already produced such documents.  The core of this discovery dispute involves Request Nos. 11-12, which, as already stated in the Motion to Quash, are (1) over broad, burdensome and asks for protected matter; (2) was part of an improperly issued subpoena; and (3) impermissibly seeks discovery from an absent class member.[3]

**1.     Request No. 11 Should be Quashed**

Request No. 11 seeks from StoneRidge "All documents concerning the use of your screening tool to conduct trades in securities on behalf of plaintiff."  Stated simply, Request No. 11 not only seeks proprietary documents containing highly confidential trade secrets which, if revealed, could cripple StoneRidge's business, such documents have absolutely no relevance to this litigation or to any purported class certification issues herein.  *See* Stocke Affidavit, ¶7.  Whether such documents are protected by a protective order herein, as argued by Defendants, Def. Memo at 9, does not address the issues of relevancy or how production of such documents would impact class certification.  Tellingly, Defendants' Opposition to the Motion to Quash does not address the issues of relevancy or relation to class certification, despite the fact that such issues were raised by StoneRidge in the Motion to Quash.

---

[3]     Since Defendants' Opposition does not address the test set forth for seeking discovery from absent class members set forth in the Motion to Quash from *Kops v. Lockheed Martin Corp.*, 2003 U.S. Dist. LEXIS 8568 (C.D. Cal. May 14, 2003), StoneRidge will also rely on its analysis under the *Kops* test delineated in the Motion to Quash in arguing that such discovery of an absent class member is improper and harassing, and will not re-iterate said arguments herein.

Stated plainly, StoneRidge's proprietary screening tool in no way affects the resolution of any issue in dispute in the underlying litigation, including class certification issues.  As such, such documents are completely irrelevant in the underlying litigation, and StoneRidge should not be required to produce the screening tool, particularly in light of the highly confidential and proprietary nature of such screening tool. Consequently, StoneRidge's Motion to Quash Request No. 11 should be granted.

### 2.  Request No. 12 Should be Quashed

Request No. 12 seeks from non-party StoneRidge "Documents sufficient to disclose all transactions in securities (other than VeriSign) by you during the period of January 25, 2000 to October 25, 2002." Despite Defendants' argument to the contrary, there is absolutely no conceivable probative value to evidence concerning non-party StoneRidge's transaction history in non-VeriSign securities[4].  Information concerning non-party StoneRidge' trading patterns, strategies and the like in non-VeriSign securities bear no relevance to any issue at this stage of the litigation.  StoneRidge is not a proposed class representative.  This request will shed no light on SMW Pension Fund's typicality or commonality with other class members[5].  *See, e.g., DeRance, Inc. v. Paine Webber, Inc.* 872 F. 2d 1312, 1326 (7th Cir. 1989); *Burnstein v. Applied Extrusion Techs. Inc.*, 153 F.R.D. 488, 490-91 (D. Mass. 1994); *Malanka v. Data Gen. Corp.*, 1986 WL 541 (D. Mass. July 2, 1986).  The mere "possibility" that such discovery could reveal a unique trading strategy to render a proposed

---

[4]     Defendants aver that they need such documents to determine if StoneRidge's client Sheet Metal Workers' Local Union No. 19 Pension Fund ("SMW Pension Fund") relied upon the integrity of the market in making its trades.  However, as noted in the Motion to Quash, n.2, documents concerning SMW Pension Fund were already provided to Defendants in SMW Pension Fund's production of over 12,000 pages of documents, as well as by StoneRidge.

[5]     Indeed, since the passage of the PSLRA, courts have uniformly rejected the contention that sophisticated investors (or in this case, financial advisors for a pension fund, and derivatively, that pension fund) may be subject to unique defenses and therefore cannot or should not represent a class.  The PSLRA clearly favors institutional investors, who are much more likely to have sophisticated investment strategies.  *In re Tyson Foods Sec. Litig.*, 2003 U.S. Dist. LEXIS 17904, at *20 (D. Del. Oct. 6, 2003).

class representative "atypical" is not enough to warrant the extremely onerous burden involved with a non-party providing such discovery. *See, e.g., Derance*, 872 F. 2d at 1326; *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 113-14 (W.D. Pa. 2003). Such discovery requests are unduly burdensome and unreasonable. *See, e.g., Batture Fleet, Inc. v. Browner*, *et al*, 2000 U.S. Dist. LEXIS 8470 (E.D. Louisiana 2000)(motion to quash granted where subpoenas were unreasonable and over broad, sought valuable trade secrets, and where production would be unduly expensive).

Defendants cite mostly to cases concerning the breadth and scope of production of a party.[6] Defendants argue, Def. Mem. at 7, that evidence of StoneRidge's non-VeriSign transactions may show that StoneRidge, and derivatively SMW Pension Fund, did not rely on representations by Defendants or on the integrity of the market, and therefore that SMW Pension Fund is an atypical representative[7]. Such arguments are without merit. A similar argument was recently rejected by the Western District of Pennsylvania in *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 113-14 (W.D. Pa. 2003) (defendants' unique defense in putative securities fraud class action that class representative plaintiff did not likely rely on efficient market in purchasing corporation's stock was not likely to become a major focus of the litigation, and thus, representative plaintiff's claims were not atypical of putative class members' claims, for purposes of "typicality" prerequisite for class certification.).

---

[6]     However, many recent district court opinions, in which class certification was granted, have emphasized that discovery of investment strategies and techniques, as evidenced by transactions in other securities such as Defendants seek here, is irrelevant. *See, e.g., In re THQ Inc. Sec. Litig.*, Case No. CV-00-1783 (AHM), 2002 U.S. Dist. LEXIS 7753, at *18-20 (C.D. Cal. March 22, 2002); *In re Applied Micro Circuits Sec. Litig.*, 2003 U.S. Dist. LEXIS 9371, at *12-15 (S.D. Calif. May 20, 2003)(Lead Plaintiff provided sufficient documentation in discovery, including a listing of its transactions *only in the security at issue* during the class period).

[7]     Defendants did not limit Request No. 12 to StoneRidge's relationships or dealings with SMW Pension Fund, despite admitting that the purpose for seeking such documents is to demonstrate SMW Pension Fund's reliance or non-reliance on the integrity of the market. Def. Mem. at 7.

It defies logic that non-party StoneRidge, whose primary line of business is the buying and selling of securities, would be required to produce nearly three years of transaction records (dating from January 25, 2000 to October 25, 2002) unrelated to the security involved in this litigation to demonstrate whether one of its clients, SMW Pension Fund, is an adequate class representative[8]. There can be nothing gained from Defendants' inquiry into non-VeriSign transactions from all of StoneRidge's clients other than to harass StoneRidge.   The Court should not countenance Defendants' requests for such overly expansive, overly broad, burdensome and highly personal information for such a vexatious purpose[9].

StoneRidge attached the Affidavit of Joseph Stocke as an exhibit to the Motion to Quash, averring the specific harm to StoneRidge if forced to comply with Defendants' far-reaching discovery requests.  The hardship to StoneRidge, a company in the business of buying and selling securities with $600 million in assets under management, is particularly egregious.  Stocke Affidavit, ¶¶3-4. Requiring StoneRidge to produce all trading information dating back to one year before the class period and ending six months after the end of the class period would force StoneRidge to produce all documents used, prepared by or received by StoneRidge during this time frame, information concerning StoneRidge's entire operations.  *Id.* at ¶¶6-7.  It would force StoneRidge to spend much of its manpower and resources on the litigation and not on its operations, crippling StoneRidge's

---

[8]     Although Congress did not intend to upset the law concerning adequacy and typicality in enacting the PSLRA, subjecting sophisticated investors such as SMW Pension Fund, and their non-party financial advisors, to discovery requests that bear no relevance to the class certification determination would thwart the PSLRA policy of encouraging sophisticated investors to direct the course of securities fraud litigation cases.    Showing the level of sophistication of a plaintiff, or in this case, derivatively showing the sophistication of SMW Pension Fund through inquiry into the sophistication of StoneRidge, does not render a plaintiff atypical, and therefore any inquiry in this regard is  irrelevant.  *See, e.g., Burstein v. Applies Extrusion Techs., Inc.*, 153 F.R.D. 488, 490-91 (D. Mass. 1994); *Malanka v. Data Gen. Corp.*, 1986 WL 541 at *1 (D. Mass. July 2, 1986).

[9]     This is particularly true with regard to StoneRidge, a company in the business of buying and selling securities.  Such discovery will impermissibly provide Defendants with trade secrets as to StoneRidge's general trading strategies, which has no relevance to this case.

ability to conduct business.  *Id.*  It would also require StoneRidge to violate agreements with all of its clients.  *Id.* at ¶5.  This, too, would result in unreasonable and unduly burdensome expense in terms of time and money, and would jeopardize StoneRidge's livelihood.  *Id.* at  ¶¶5, 6, 8.  Defendants acknowledge, Def. Mem. at 5, that the Court must analyze cost versus benefit in analyzing this discovery dispute.  When doing so, it is clear that the costs and burdens to StoneRidge of production will far outweigh any purported minimal benefit of production to Defendants.

Finally, Turner Investment Partners, Inc. ("Turner") served written objections to the second subpoena based upon similar grounds to the grounds StoneRidge has averred herein, i.e., that the second subpoena: (1) was improperly served; (2) was over broad; and (3) sought confidential and proprietary trade secrets.  Similarly, Turner also does not intend to produce documents responsive to the second subpoena, despite having produced documents responsive to a less objectionable first subpoena.  Defendants have not moved to compel compliance with the non-party subpoena served on Turner in either this Court, the court which issued the subpoena or in the Northern District of California.

## CONCLUSION

For all of the foregoing reasons, StoneRidge respectfully requests that the Court deny Defendants' Motion to Transfer and grant Non-Party StoneRidge Investment Partners' Motion to Quash Subpoena for Production of Documents and Things.

Dated: June 15, 2004                    Respectfully submitted,

                                        LAW OFFICES BERNARD M. GROSS, P.C.
                                        By:


                                        /s/ Deborah R. Gross Validation Code DG639
                                        BERNARD M. GROSS
                                        DEBORAH R. GROSS
                                        1515 Locust Street, 2nd Floor
                                        Philadelphia, PA 19102
                                        Telephone: 215/561-3600
                                        215/561-3000 (fax)

                                        Counsel for StoneRidge Investment Partners

oppo to motion to transfer and reply memo in support o motion to quash

10

## <u>CERTIFICATE OF SERVICE</u>

I, Deborah R. Gross, hereby certify that a true and correct copy of the foregoing Opposition to Defendants' Motion to Transfer and Reply Memorandum of Law in Further Support of All Actions Non-Party StoneRidge Investment Partners' Motion to Quash Subpoena for Production of Documents and Things to the below listed counsel by fax on this 15th day of June 2004.

Mark W. Robertson, Esquire
O'Melveny & Myers
**VIA FAX - 213-430-6407**

David M. Furbush, Esquire
O'Melveny & Myers LLP
**VIA FAX - 650-473-2601**

Jeffrey Lawrence, Esquire
Lerach Coughlin Stoia & Robbins LLP
**VIA FAX - 415-288-4534**

Josh DeVore, Esquire
Cohen Milstein Hausfeld & Toll
**VIA FAX - 202-408-4699**

Edward F. Mannino, Esquire
Akin Gump
**VIA FAX - 215-965-1210**

_____
**DEBORAH R. GROSS**